GREEN B. HURLEY, *et al.*, plaintiffs in error, *vs.* DAVID D. GAULY and CHAS. R. BURKE, defendants in error.

1. Where the Court below grants a new trial; and no principle of law is violated, this Court will not disturb the ruling.
2. This Court will more reluctantly control the action of the Court below where a new trial has been granted, than where one has been refused.

Assumpsit. Motion for new trial. Tried before Judge CLARKE. Stewart Superior Court. April Term, 1867.

This was assumpsit upon a parol sale of cotton for Confederate money.

Plaintiff introduced the evidence of John B. Richardson, to the effect that, thrice in 1865, he called on Hurley for three thousand pounds of lint cotton, as having been sold by Hurley to plaintiff; that Hurley denied having sold plaintiff any cotton, but afterwards, on the same day, he said

to witness he had no cotton, and plaintiff must wait till he made it, and did not deny the sale and the payment of the price for the cotton; lint cotton was, at the time of demand, worth from forty-two to forty-five cents per pound in that market and in the present currency.   Plaintiff closed.

Defendant was then examined as a witness in his own behalf.   He testified that some time in 1864, Gauley tried three-times to buy from him three thousand pounds of lint cotton, and at each time Gauley was reminded that Confederate money was fast depreciating, and Hurley doubted whether he could use the money in payment of his debts, and remarked that if he could so use the money, he would take the offered price, to-wit: sixty cents per pound; Gauley refused to pay that price, on condition that he would take back the money if Hurley could not so use the money, until the last time he offered to buy; it was then agreed that Gauley should pay that price, and if Hurley could not so use the money he would return the money to Gauley.   The precise date of this trade was not remembered, it was in the fall of 1864, and before Christmas.

Hurley tried to pay James Matthews and Benjamin Pinkston, two of his creditors in said county, $———, which he owed them respectively—they refused to take the money; he afterwards, once before the close of the war and once after it closed, tendered it back to Gauley, and he refused to receive it.   This tender was some time after Christmas, between January and March, 1865.

Hurley also stated that he did not recollect the conversation related by Richardson, that Gauley did not pay for the cotton at the time of the agreement, but a few days thereafter in Lumpkin; Burke paid him for the cotton, Gauley being absent; no time was appointed by plaintiffs for the delivery of the cotton, but witness intended, if he could use the money, to appoint a time and deliver the cotton, which was then at his gin-house; he did not know Burke in the trade; he did tell Burke he would deliver the cotton; the cotton was of middling quality.

Defendant closed.

In rebuttal, BURKE was examined, who testified that when he paid Hurley for the cotton, Hurley said he was then very busy, but would soon gin, pack, and let him know it; Burke replied that he had rather have it at the gin-house than in town, and it was then understood between them that Hurley would gin and pack it and keep it at the gin-house till called for by plaintiff; plaintiff afterwards sold the cotton to Richardson, as agent for Long, of Augusta, and authorized Richardson to call for it; at the time of the sale cotton was not worth sixty cents per pound in that county in Confederate money, and witness complained at Gauley's giving so much for the cotton.

The evidence being closed, the Court charged the jury as follows:

The case under consideration falls under the ordinance of the Convention regulating contracts made between 1st January, 1861, and 1st June, 1865, and shall receive an equitable construction, etc., and the verdict of the jury shall be rendered on principles of equity.

I shall proceed to advise you what are the principles of equity applicable to this case. It is claimed by the defendant that the purchase of the cotton was conditional, that if he could not use the money in payment of debts, Gauley was to take it back and rescind the trade, that defendant tried to use the money as agreed, failed to get it off, and afterwards tendered it back to Gauley, who refused to receive it, but held on to the contract. If Gauley agreed to rescind the trade should the money prove unavailing to defendant, and if defendant promptly and in good faith tested its availability and finding it unavailing for payment of debts, tendered it back promptly, plaintiffs were bound to receive it and release the cotton, and if they refused to receive it and release the cotton, defendant is released from the trade.

In order to release the defendant upon this ground, it should appear that he proceeded within a reasonable time to test the value of the money, and that on finding it useless he tendered it back at the earliest opportunity. If he kept the money an unnecessarily long time, and especially if in the

meantime it depreciated in value, plaintiffs are not bound to take it back, but were entitled to insist on the purchase.

If defendant made this trade in the fall of 1864, for Confederate money, known to be in a depreciating condition, and did not tender back the money until between January and March, 1865, and if plaintiffs and defendant and defendant's creditors to whom the money was offered resided in the same county, and no good cause be shown for not returning it sooner, in the opinion of the Court defendant had kept it too long, and by his negligence lost the right to force it back on the plaintiffs. In such case, the sale and purchase lost the condition and became absolute, and if defendant afterwards refused to fulfill it he is liable.

The plaintiffs claim that they bought three thousand pounds of lint cotton from defendant and paid him for it, he having the cotton at his place and being bound to deliver it on demand, that they demanded it through their agent and defendant refused to deliver it. If such are the facts proved, plaintiffs are entitled to be paid what they have been damaged by such breach of the contract.

If the contract of purchase was based on an adequate consideration, and such a failure of defendant to fulfill it occurred, then plaintiffs are entitled to recover the full value of the cotton at the time of such demand and refusal, with interest to this date. Should you find for the plaintiffs upon the main question, in ascertaining the amount of the damages, you should take into the account the inadequacy of the price paid, if such inadequacy existed, and on account of such inadequacy you should reduce the plaintiffs verdict to what seems to be their actual damages by the breach of the contract.

In determining whether the consideration be adequate, you are to consider whether the price paid was the fair market price at the time and place of the purchase. If the plaintiffs paid sixty cents per pound for the cotton in Confederate money, and if that was the market value thereof at the time and place of the trade, then however small the price may seem to you now to be, yet it was an adequate consideration,

Hurley, *et al. vs.* Gauly and Burke.

and such a sale based on such a consideration, and with a breach as above stated, entitles the plaintiffs to recover the full value of the cotton at the time when demanded and refused, with the interest on such sum to date.

The jury found for the defendant.

Plaintiffs thereupon moved for a new trial, because the verdict was contrary to the law, against the evidence, and against the charge of the Court.

The Court granted a new trial, and this is assigned as error.

B. S. WORRILL and M. GILLIS, for plaintiffs in error.

J. L. WIMBERLY and E. H. BEALL, represented by the Reporter, for defendant in error.

WALKER, J.

1. The Court below was dissatisfied with the verdict in this case, and granted a new trial. When the Court below grants a new trial, and no principle of law is violated, this Court will not disturb the ruling. The effect of his ruling is simply to allow the parties another hearing before another jury.

2. No rights are concluded by it, and therefore this Court will more reluctantly control the action of the Court below in granting than in refusing a new trial. In the one case the parties are remitted to a standing in Court, to have their rights passed upon according to the law and evidence applicable to the case; while on the other, the rights of the respective parties are decided finally. Hence, the refusal of the Court to grant a new trial is an important matter for the interest of the parties, and should be more thoroughly and critically examined than when the effect of his ruling is simply to place the respective parties in a condition to litigate their rights, untrammelled by an adjudication of the merits of the controversy.

Judgment affirmed.